## EARNSHAW v. McHose et al.[1]

*(Circuit Court, E. D. Pennsylvania.* November 10, 1891.)

1. CHARTER-PARTY—DESPATCH MONEY.

    A contract provided that the plaintiff should sell, and the defendants buy, iron ore at named prices, and stipulated that these prices "were based on an ocean freight rate of 12s. a ton," all freight over that sum to be added to, and all freight less than that sum to be deducted from, the invoice price. Plaintiff chartered a vessel at that rate, agreeing with it in the charter-party for £15 dispatch money and £30 demurrage for each day to be saved from or exceeding the number of days allowed for loading or unloading. Despatch money was deducted from the amount paid for freight, which defendants claimed should be deducted from the invoice charge. *Held,* in the absence of any unusual expenditure by plaintiff to secure despatch, the despatch money was merely a deduction from the freight, and belonged to defendants.

2. SAME—COMMISSIONS.

    Commissions paid by stevedores and charterers for securing them the ship's unloading was not such a deduction from the freight as belonged to defendants under the contract.

3. PLEADING AND PROOF—VARIANCE—OBJECTIONS WAIVED.

    Where a set-off has been given in evidence, though inadmissible under the pleadings at trial, it is too late, on motion to reduce verdict, to raise the point for the first time.

At Law.

*Assumpsit* by Alfred Earnshaw against Isaac McHose & Sons to recover on $56,000 as the agreed price of iron ore sold and delivered by the plaintiff to defendants in accordance with contract, which provided, *inter alia:*

"Price to be at the rate of seven dollars and seventy-five cents ($7.75) per ton of 2,240 pounds for the mined ore, commonly known as 'Marbella Lump,' and seven dollars and thirty-five cents ($7.35) for the sand ore, commonly known as 'Marbella Sand,' when loaded in cars on this side. *Freight Rate.* The above prices are based on an ocean freight rate of twelve shillings per ton. All freight over twelve shillings to be added to the invoice as part of the price of the ore, and all freight under twelve shillings to be deducted from the invoice."

To fulfill this contract, Earnshaw chartered a steam-ship under a charter-party which provided, *inter alia,* after naming 40 days to be allowed for loading and unloading:

"Despatch money at the rate of fifteen pounds per day of 24 hours for any time saved in loading ${}^{and}_{or}$ discharging, payable by the ship to shipper at loading port, charterer at discharging port, as charterer may elect. Demurrage

[1] Reported by Mark Wilks Collet, Esq., of the Philadelphia bar.

over and above the said lay-days at the rate of thirty pounds per day of 24 hours, except in case of any unavoidable accidents which may hinder the loading or discharging."

McHose & Sons claimed that any sums of despatch money paid the shipper or charterer was to be deducted from the amount payable by them to Earnshaw, and also that a deduction should be made of all "stevedores' commissions;" and the court having refused the plaintiff's point that "the defendants are not entitled to any deduction on account of despatch money or commissions received for stevedores," it was agreed that the jury find a special verdict stating how much, if any, they allow to or credit defendants, in arriving at a verdict, on account of the rebates or allowances on freight for despatch money; and that upon a motion for a new trial, if the court shall be of opinion that defendants, as matter of law, are not entitled to such allowance or credit, the verdict may be amended or modified by the court in accordance with such opinion, saving to either party the right to except to such opinion of the court with the same effect as if it had originally been embodied in the charge, and the jury had found the verdict as finally amended or modified by the court. The court may modify the verdict as to amount of allowance for above reasons, if it shall be ascertained that the figures of the defendants are incorrect. Under this agreement the jury rendered a special verdict allowing defendants credit for dispatch money, $13,926.74. In this amount was included despatch money for cargoes under similar contracts. There had been no plea of set-off. Motions to increase and to diminish the verdict.

*Richard C. McMurtrie* and *R. P. White,* for plaintiff.

*John G. Johnson,* (*Frank P. Richard,* with him,) for defendants.

BUTLER, J. The plaintiff's rule is based on an alleged error in answering his first point. To justify interference, the error should be plain. If it is not, the question should be left to the court of appeals.

Whether the credit claimed on account of freight should be allowed depends on the construction of the freight clause in the contract in suit. In the absence of usage—of which there is no evidence—governing the construction, the court believed, on the trial, that the freight contemplated was the usual rate paid at the dates of shipment. About this there is not, probably, room for serious doubt. What doubt exists, grows out of the method of determining and stating the charter rates. A sum is specified, based on the length of time required by the service, supposing a given degree of despatch to be used in loading and unloading, with provision for deduction or allowance if the despatch is greater, and increase if it is less. Thus three rates are, substantially, named, calculated on the supposed number of lay-days required. The court believed the smaller sum to be the rate contemplated by the contract, in view of the time occupied; that it was the rate for the service rendered; that if the greater number of days had been required the larger sum would have governed—demurrage belonging to the category of freight;

that, if unusual exertion or expenditure had been made to obtain the earlier despatch, this should be compensated. The evidence showed it had not, the despatch being no quicker than is common in such cases. This construction seemed to be required, not only by the terms of the contract, but by its spirit. It seemed reasonable to believe that the parties dealt on the basis of the ore's cost to the plaintiff and the demand for it; that his profits were thus secured, and that, as the cost of transportation was then unknown, this was provided for by the clause in question, which had no other object. It seemed improbable that the parties contemplated the plaintiff's receipt of a large additional sum, by charging the defendants so much more on account of freight than was expended. Such was the court's impression at the trial. The credit claimed on account of "stevedores' commissions" paid the plaintiff, did not seem to fall within the terms of the contract, nor so directly within its spirit as to justify this claim. After full consideration of what was urged in support of the rules, it is sufficient to say that we are not convinced that the instruction was erroneous. The rules are therefore dismissed.

The plaintiff has also made the point that so much of the claim on account of freight as relates to the Campinil and Alvito ores delivered under similar contracts is inadmissible under the pleadings. The point, however, comes too late. If it had been made at the trial a plea of set-off might have been entered. The evidence was admitted without objection on this ground. The plea might still be entered, we think, if necessary to sustain the verdict.